**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**AMANDA S. HARRIMAN,**

      **Plaintiff,**

                                       **Civil Action 2:20-cv-6548**

      **v.**                                  **Judge Michael H. Watson**

                                       **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL
SECURITY,**

      **Defendant.**

**REPORT AND RECOMMENDATION**

Plaintiff, Amanda S. Harriman ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for supplemental security income benefits ("SSI"). Pending before the Court is Plaintiff's Statement of Errors (ECF No. 17), the Commissioner's Memorandum in Opposition (ECF No. 20), Plaintiff's Reply (ECF No. 23) and the administrative record (ECF No. 12). For the reasons that follow, it is **RECOMMENDED** that the Court **AFFIRM** the Commissioner's non-disability determination and **OVERRULE** Plaintiff's Statement of Errors.

**I.        BACKGROUND**

Plaintiff protectively filed her SSI applications on February 9, 2015, alleging that he became disabled on June 13, 2017. (R. at 21, 284–88.) Plaintiff's application was denied at the initial level in June 2015 (R. at 174–90), and at the reconsideration level in November 2015 (R. at 192–210). A hearing was held by an Administrative Law Judge Benita K. Bivins ("ALJ Bivins") in October 2017 (R. at 103–41), before she issued an unfavorable determination in March 2018 (R. at 18–45.) On January 1, 2019, the Appeals Council denied Plaintiff's request

for review and adopted ALJ's Bivins determination as the Commissioner's final determination. (R. 1–7.)  Plaintiff sought judicial review of that determination in a case docketed this Court under Case No. 2:18–cv–01170.  (R. at 1190–91.)  In that case, the parties successfully filed a joint motion to remand the matter for further proceedings.  (R. at 1192–93, 1195–96.)

Upon remand, a hearing was held on July 23, 2020, before Administrative Law Judge Julianne Hostovich ("ALJ Hostovich") (R. at 1120–53), who subsequently issued an unfavorable disability determination on August 24, 2020 (R. at 1057–84).  In her August 24, 2020, Notice of Decision ("Notice"), ALJ Hostovich informed Plaintiff that she had 30 days to file written exceptions to the August 24, 2020 determination with the Appeals Council ("AC") and that the AC had the power to review it even if Plaintiff opted not to file such exceptions.  (R. at 1054–56.)  Moreover, the Notice informed Plaintiff that if she did not file written exceptions to ALJ Hostovich's determination and the Appeals Council did not independently review it, the determination would become the Commissioner's final decision 61 days later.  (*Id.*)  The Notice additionally indicated that Plaintiff would have 60 days after the determination became final to file a civil action in federal court.  (*Id.*)  It appears that Plaintiff did not file written exceptions to the determination, and that the AC did not independently review it.  Plaintiff commenced this federal action on December 24, 2020.  (ECF No. 1.)

In this action, Plaintiff asserts that the ALJ Hostovich's residual functional capacity ("RFC")[1] determination is not supported by substantial evidence because she erred by failing to incorporate into it a limitation that Plaintiff required a rollator walker.[2]  (ECF No. 17, at PageID

---

[1] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

[2] Defendant indicates, and Plaintiff does not deny, that a rollator walker is a "type of walker that has three or four wheels, a handlebar with brakes, and a seat."  (ECF No. 20, at PageID # 1750.)

# 1717–21.)  Plaintiff additionally asserts that ALJ Hostovich lacked authority to issue a disability determination because the statute governing removal of the Commissioner of Social Security is unconstitutional.  (*Id*., at PageID # 1722–26.)  The Court concludes that both of Plaintiff's contentions of error lack merit.

## II.    THE ALJ's DECISION

On August 24, 2020, ALJ Hostovich issued a decision determining that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 1057–76.)  ALJ Hostovich found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2023.  (R. at 1060.)  At step one of the sequential evaluation process,[3] ALJ Hostovich found that Plaintiff had not engaged in substantial gainful activity since February 1, 2015, her alleged date of onset.  (*Id.*)  At step two, ALJ Hostovich found that Plaintiff had the following severe

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §§ 404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

impairments: multiple sclerosis, degenerative disc disease, obesity, and depressive disorder.  (R.

at 1060.)  At step three, the ALJ found that Plaintiff did not have an impairment or combination

of impairments that met or medically equaled one of the listed impairments described in 20

C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 1062.)

The ALJ then set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the
> claimant has the residual functional capacity to perform light work as defined in 20
> CFR 404.1567(b) except the claimant can stand and walk 4 hours in an 8-hour
> workday. The claimant can occasionally climb ramps and stairs. She can never
> climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, and
> crouch.  She can never crawl.  She can have no exposure to extreme heat or hazards.
> She would need to use a cane for ambulation.  She can perform simple routine tasks
> involving only simple work related decisions with no fast-paced production quotas.

(R. at 1065.)

At step four, the ALJ relied on testimony from a vocational expert ("VE") to find that

Plaintiff was unable to perform his past relevant work.  (R. at 1075–75.)  At step five, the ALJ

again relied on testimony from a VE to determine that, in light of Plaintiff's age, education, work

experience, and RFC, jobs existed in significant numbers in the national economy that he could

perform.  (R. at 1075–76.)  The ALJ therefore concluded that Plaintiff was not disabled under the

Social Security Act, since February 1, 2015, the alleged date of onset.  (R. at 1076.)

### III.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the

Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to

proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C.

§ 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is

defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## IV.     ANALYSIS

As explained previously, Plaintiff alleges two contentions of error: 1) ALJ Hostovich erred by failing to incorporate into her RFC a limitation that she needed to use a rollator walker; and 2) ALJ Hostovich lacked authority to issue a disability determination because the statute

governing removal of the Commissioner of Social Security is unconstitutional.[4]  The

undersigned addresses each contention of error in turn and finds that they lack merit.

**A.**       **The ALJ did not commit reversible error by failing to incorporate into Plaintiff's RFC a limitation for use of a rollator walker.**

Plaintiff first contends that the ALJ committed reversible error by failing to include use

of a rollator walker in her RFC.  Plaintiff's contention lacks merit.

If a hand-held assistive device is not a medically necessary or required, it cannot be

considered a restriction or a limitation on a claimant's ability to work.  *See Carreon v.*

*Massanari,* 51 F. App'x 571, 575 (6th Cir. 2002) (explaining standard to determine if a cane was

a necessary device (i.e., medically necessary)).  Social Security Ruling 96-9p instructs as

follows:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).

SSR 96-9P, 1996 WL 374185, at *7 (July 2, 1996).

---

[4] Plaintiff also apparently questions her decision to file the instant action.  Specifically, she states that ALJ Hostovich issued an unfavorable determination on August 24, 2020, and that "[i]nstead of filing an appeal with the [AC] again, [Plaintiff] instead filed a Complaint with this Court" and that "[a]s such, this case is not properly before this Court."  (ECF No. 17, at Page ID # 1711.) Defendant, understandably, declined to address Plaintiff's perfunctory suggestion that she maybe failed to exhaust her administrative remedies and Plaintiff's failure to articulate why she believes that prohibits her from proceeding in an action that she initiated.  In the absence of any developed argument from Plaintiff on this subject, the Court is not required to engage in an extended analysis of the issue.  *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (citation and internal quotation marks omitted) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").  In any event, the Notice indicated that ALJ Hostovich's determination would become final in these circumstances.  (R. at 1054–56.)  And it appears that Defendant has waived any possible exhaustion defenses.

In this case, Plaintiff's treating neurologist, Dr. Robert Fallis, opined that Plaintiff's multiple sclerosis symptoms caused her limitations in her ability to balance while standing and walking, that she required a walker in order to stand or walk or maintain an upright position, and that these opinions were based on abnormal MRI scans that were done in 2015 and 2017. (R. at 1047.) ALJ Hosovich gave Dr. Fallis' opinions little weight, and explained her decision to do so as follows:[5]

> The undersigned affords little weight to the opinions of Dr. Fallis, wherein he opined that the claimant required the use of a walker in order to stand or walk in the upright position and that her multiple sclerosis symptoms cause her limitations in balancing while standing or walking (32F). Notably, this opinion was made in October of 2017. Dr. Fallis's opinion is inconsistent with his own findings during examinations and the claimant's subjective reports of assistive device usage, as well as other medical findings. For example, Dr. Sethi noted that the claimant was able to walk on her tiptoes and heels and squat without the use of any ambulatory aids (10F/2). Dr. Fallis' records do not indicate the claimant requires the use of a walker for ambulation, aside from this opinion. Further, in August of 2017, the claimant's examination revealed normal strength and coordination (31F). In November of 2019, the claimant reported to Dr. Fallis that she was stable since her last infusion but had continued lumbar pain and had fallen (45F/9). Physical examination revealed normal strength findings, normal reflexes, normal coordination, normal sensation, and a normal gait finding (45F/12-13). More specifically, the claimant was documented with a normal gait stride length, arm swing, and base width and she was able to walk on her toes, heels, and tandem walk (45F/13). Such performance is not consistent with requiring the claimant to use a walker. In February of 2018, the claimant was documented describing using her "cane and rollator at times" (28F/21). In October of 2018, Dr. Fallis noted that the claimant only used a rollator for distance (30F/3). In May of 2020, the claimant saw Dr. Fallis via video-telehealth wherein she reported falls and he asked her to get a Rollator at Walmart (45F/8)

(R. at 1073–74.)

Moreover, ALJ Holsovich specifically determined that although Plaintiff's RFC included a limitation for use of a cane, use of a rollator walker was not medically necessary. ALJ Hosovich wrote as follows:

---

[5] Plaintiff does not challenge ALJ Hosovich's assessment of Dr. Fallis' opinion.

> She would need to use a cane for ambulation as she is noted several times within the record as using a cane to ambulate. The undersigned notes that the claimant also used a rollator walker at times; however, this was not prescribed. Furthermore, the record does not support the required use of a rollator walker. The undersigned notes that In [*sic*] May of 2020, the claimant saw Dr. Fallis via video-telehealth wherein she reported falls and he asked her to get a Rollator at Walmart (45F/8). In October of 2018, Dr. Fallis noted that the claimant only used a rollator for distance (30F/3). In February of 2018, the claimant was documented describing using her "cane and rollator at times" (28F/21). These self-reports about her usage, together with her objective performance on physical examinations, support allowing the claimant to use a cane for ambulation; however, they do not rise to the level of requiring a rollator.

(R. at 1074.)  These discussions demonstrate that ALJ Hosovich determined that a rollator walker was not medically necessary for Plaintiff because her performance on objective examinations did not indicate that she always required one.  Substantial evidence supports that determination— clinical examinations and other objective findings regularly indicated that Plaintiff did not need such a device.

The record reflects the following findings from 2015.  A January 30, 2015 examination of Plaintiff's extremities showed a normal range of motion.  (R. at 773.)  Examinations on April 21, and June 9, 2015, noted that Plaintiff's gait was normal, and that she was able to stand without difficulty.  (R. at 740, 744.)  During a consultative examination on April 28, 2015, Plaintiff was able to walk on her tip toes and heels, could squat, and had a normal gait on a level surface.  (R. at 725.)  It was noted that Plaintiff was not using any ambulatory aid during that examination.  (*Id*.)  During that same examination, Plaintiff scored 5/5 on strength tests of all her muscles including muscles in her hips, legs, and feet, and she had normal ranges of motion in almost all joints including her hips, knees, and ankles.  (R. at 727, 728–30.)

The record also reflects the following findings from 2016.  On September 27, 2016, an examiner noted that Plaintiff had no difficulty getting on or off an examination table or rising from a chair.  (R. at 904.)  She also had normal ranges of motion in both lower extremities and a

normal gait.  (R. at 907.)  An examination on December 17, 2016, found that although Plaintiff

ambulated with a cane, she had normal gait, normal muscle tone, and 5/5 strength.  (R. at 924.)

An examination of her extremities that day was also normal, and she had a full range of motion.

(*Id*.)

The record reflects the following findings from 2017.  On March 13, 2017, Plaintiff

requested a rollator walker, and it was noted that she used a cane.  (R. at 929, 931.)

Nevertheless, upon examination, Plaintiff had normal gait, normal muscle tone, and 5/5 strength.

(R. at 931.)  On April 10, 2017, Plaintiff reported injuring her left knee during a fall.  (R. at 936.)

An examination found that she had normal gait, normal muscle tone, and 5/5 strength.  (R. at

938.)  X-rays of Plaintiff's left knee that day also showed minimal-to-mild degenerative changes

at the patellofemoral joint surface interface.  (R. at 915.)  Examinations on June 5, June 20, and

July 24, 2017, found that Plaintiff had normal gait, normal muscle tone, and 5/5 strength.  (R. at

945, 953, 1000.)  Examination of her extremities were also normal, and she had full ranges of

motion.  (*Id*.)  On August 29, 2017, Plaintiff had a normal gait and moved all her extremities.

(R. at 1035.)  On September 5, and December 5, 2017, Plaintiff had normal gait, normal muscle

tone, and 5/5 strength, and she had no pronator drift.  (R. at 84, 92.)  No movement abnormalities

were detected on those dates, and examinations of her extremities were also normal.  (*Id*.)

The undersigned additionally notes that when medical records indicated that Plaintiff

used a rollator walker, contemporaneous examination findings were relatively benign.  For

instance, on August 7, 2017, an examiner noted that Plaintiff used a rollator and that she was

applying for disability.  (R. at 1038, 1041.)  She completed 25 feet timed walks in 8.93 and 8.5

seconds with her device that day.  (R. at 1041.)  On October 11, 2017, it was noted that Plaintiff

used a rollator.  (R. at 1051.)  Plaintiff completed 25 feet timed walks in 18.1 and 23.7 seconds

with her device that day. (*Id.*) It was also noted that Plaintiff had normal stride length, arm swing, and base width. (R. at 1052.) She was able to walk on her toes and heels and tandem walk. (*Id.*) On December 14, 2017, it was noted that Plaintiff used a rollator. (R. at 49.) She completed 25 feet timed walks in 12.28 and 11.4 seconds with her device. (*Id.*) On February 27, 2018, Plaintiff reported that she used a cane and a rollator at times. (R. at 98.) But Plaintiff also had normal gait, normal muscle tone, and 5/5 strength, and she had no pronator drift that day. (R. at 101.) No movement abnormalities were detected that day and an examination of her extremities was also normal. (*Id.*) During a May 11, 2020, tele-health appointment with Dr. Fallis, Plaintiff reported recurrent hip pains and frequent falls as if her knees were "buckling." (R. at 1580.) But Plaintiff also reported that her gait was stable and unchanged since her last in-person appointment. (R. at 1585.) On that date, Dr. Fallis wrote that he asked Plaintiff to get a Rollator at Walmart; he believed Plaintiff's gait issues were related to bilateral inguinal hernia which had presented themselves in the past; and that he would treat Plaintiff for these issues with a low-dose steroid. (*Id.*)

In sum, substantial evidence supports ALJ Hosovich's determination that a rollator walker was not medically necessary. (ECF No. 17, at PageID # 1719–20.) Although Plaintiff points to record evidence that she argues could support a contrary conclusion, a reviewing Court must defer to an ALJ's determination if it is supported by substantial evidence. *Blakley*, 581 F.3d at 406; *cf. Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 649 (6th Cir. 2013) ("The ALJ retains a 'zone of choice' in deciding whether to credit conflicting evidence."). Such is the case here. For these reasons, the Court finds that Plaintiff's first contention of error lacks merit.

**B.**     **The alleged unconstitutionality of the statute governing the Commissioner of Social Security's removal from office does not require remand.**

      Plaintiff's second contention of error turns on the constitutionality of the statute governing the Commissioner of Social Security's removal from office.  As an initial matter, Plaintiff's constitutional claim is procedurally improper.  Plaintiff's Complaint does not include any constitutional claims.  (*See* ECF No. 1.)  Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, however, that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Although a complaint need not provide "detailed factual allegations," at a minimum, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell v. Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Here, the United States Supreme Court case upon which Plaintiff bases her constitutional claim was decided on June 20, 2020.  Yet Plaintiff gave no notice, let alone fair notice, of her constitutional claim in her December 24, 2020, Complaint.  *See John R. v Comm'r of Soc. Sec.*, Case No. C20-6176-MLP, 2021 WL 5356719, *7 (W.D. Wash. Nov. 16, 2021) (finding that a plaintiff failed to comply with Rule 8 by failing to plead a separation of powers claim in complaint seeking judicial review of Commissioner's decision to deny benefits); *Shannon R. v. Comm'r of Soc. Sec.*, Case No. C21-5173, 2021 WL 5371394, at * 6–7 (Nov. 18, 2021) (same).  For that reason, Plaintiff failed to comply with Rule 8 such that her constitutional claim is not properly before the Court.  Nevertheless, as explained below, Plaintiff's constitutional claim would fail on the merits.

      Plaintiff relies on *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S.Ct. 2183 (2020).  In *Seila Law*, the United States Supreme Court held that the Consumer Financial Protection Bureau's ("CFPB") removal structure, which allowed for the CFPB director to be removed by the President only for "inefficiency, neglect of duty, or malfeasance of office," 12

U.S.C. § 5491(c)(3), violated the separation of powers by insulating the director from removal by the President. *Id.* at 2197. Because 42 U.S.C. § 902(a)(3), the statute governing the Commissioner of Social Security's removal, contains a similar restriction on the President's ability to remove the Commissioner except for cause, Plaintiff contends that § 902(a)(3) also unconstitutionally violates the separation of powers. As a result, Plaintiff argues, "[t]he ALJ and Appeals Council judges here adjudicated the plaintiff 's disability claim under the delegated authority of a Commissioner who had no constitutionally valid legal authority to delegate." (Pl.'s Reply 6, ECF No. 19.)

However, even assuming that § 902(a)(3)'s removal provision is unconstitutional, remand is not necessarily required. In *Collins v. Yellen*, 141 S. Ct. 1761 (2021), decided the year after *Seila Law*, the Supreme Court considered a similar statute governing removal of Directors of the Federal Housing Finance Agency ("FHFA"). The *Collins* majority held that "[a]lthough the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA [ ] as void." *Id.* at 1787 (emphasis in original); *see also id.* at 1788, n.23 ("Settled precedent also confirms that the unlawfulness of [a] removal provision does not strip the Director of the power to undertake the other responsibilities of his office[.]" (citing *Seila Law*, 140 S.Ct. at 2207–2211)). Instead, to obtain reversal of an agency decision, a plaintiff would need to demonstrate "compensable harm" flowing from the unconstitutional removal clause. *See id.* at 1788–89 (remanding for further proceedings to determine whether compensable harm to Plaintiff occurred due to the President's inability to remove a Director of the Federal Housing Finance Agency except for cause).

Here, Plaintiff has made no showing of any possible compensable harm flowing from § 902(a)(3). Nor is it likely Plaintiff could, because the President's choice of Social Security Commissioner has very little impact on the result of any particular ALJ or Appeals Council decision. *Cf. Collins*, 141 S.Ct. at 1802 (Kagan, J. concurring) ("[G]iven the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone . . . . When an agency decision would not capture a President's attention, his removal authority could not make a difference."). Notably, District Courts sitting in this Federal Judicial District have preliminarily determined that the allegedly unconstitutional nature of § 902(a)(3) does not require remand. *See Crawford v. Comm'r of Soc. Sec.*, No. 2:21–cv–726, 2021 WL 5917130, at *7–8 (S.D. Ohio December 14, 2021); *Butcher v. Comm'r of Soc. Sec.*, 20–cv–6081, 2021 WL 6033683, at *5–8 (S.D. Ohio Dec. 21, 2021); *Miley v. Comm'r of Soc. Sec.*, No. 1:20–cv–2550, 2021 WL 6064754, at * 7–9 (N.D. Ohio Dec. 22, 2021); *Bowers v. Comm'r of Soc. Sec.*, No. 2:20–cv–6024, 2022 WL 34401, at * 6–8 (S.D. Ohio Jan. 4, 2022). Likewise, Courts in other Federal Judicial Circuits have uniformly concluded that the allegedly unconstitutional nature of § 902(a)(3) does not require remand. *See, e.g., Lisa Y. v. Comm'r of Soc. Sec.*, ___ F. Supp. 3d ___, No. C21-5207-BAT, 2021 WL 5177363, at *5 (W.D. Wash. Nov. 8, 2021); *Robinson v. Kijakazi*, No. 1:20-CV-00358-KDB, 2021 WL 4998397, at *3 (W.D.N.C. Oct. 27, 2021); *Alice T. v. Comm'r Soc. Sec.*, No. 8:21CV14, 2021 WL 5302141, at *18 (D. Neb. Nov. 15, 2021); *Standifird v. Comm'r of Soc. Sec.*, No. 20CV1630-GPC(BLM), 2021 WL 5634177, at *3 (S.D. Cal. Dec. 1, 2021). The undersigned finds the reasoning of these cases persuasive and reaches the same result here.

## V.    RECOMMENDED DISPOSITION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits.  For the foregoing reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VI.    PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).   A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


                                        /s/ *Chelsey M. Vascura*
                                        CHELSEY M. VASCURA
                                        UNITED STATES MAGISTRATE JUDGE